## AMARILLO TRANSFER & STORAGE CO. et al. v. DE SHONG.
### No. 4404.

Court of Civil Appeals of Texas. Amarillo.

April 22, 1935.

382

Calhoun & Williams, of Amarillo, for appellants.

J. C. Levens, of Lubbock, for appellee.

HALL, Chief Justice.

On September 16, 1933, Pete De Shong and the Amarillo Transfer & Storage Company, Inc., of which C. A. Reilly was president, were engaged in long-distance hauling between Amarillo and Oklahoma City, operating under Vernon's Annotated Civil Statutes, article 911b (Acts 41st Leg. c. 314, as amended by Acts 42d Leg., c. 277). The Amarillo Transfer & Storage Company held a common carrier's certificate, numbered 2752, issued by the Railroad Commission of Texas. On the date first mentioned, Reilly, as president and manager of the Transfer & Storage Company, executed the following instrument:

"Amarillo, Texas, September 16, 1933.

"To Whom it May Concern:

"For and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations I hereby agree to cease operations under my common carrier certificate No. 2752 and as per my letter of even date to the Railroad Commission of Texas authorizing complete cancellation of the above common carrier's certificate I further agree that I will not again operate as a common carrier over that line."

This instrument was duly executed and acknowledged by Reilly as president of the Transfer & Storage Company.

On the same day Reilly wrote to the Texas Railroad Commission that such letter would be authority to cancel the common carrier's certificate held by said Transfer & Storage Company interstate over highway 66 from the Oklahoma state line to Amarillo, Tex., and from Amarillo, Tex., to the Oklahoma state line, except that portion authorizing operation from the Oklahoma state line over federal highway 66 to Shamrock, federal highway 83 from Shamrock to Mobeetie, and state highway 52 from Mobeetie to Pampa. That for the sum of $500 the Transfer & Storage Company was transferring all of its right, title, and interest in and to the last above-described portion to Pete De Shong Motor Freight Lines, and as to what other and further steps necessary to vest full title to the last above-described portion of certificate No. 2752 it would follow the due course of procedure. The letter inclosed an express money order in the sum of $5 to cover the transfer fee.

Acting upon the authority of such letter, the Railroad Commission entered an order on the 20th day of November, 1933, "that certificate No. 2752, authorizing the operation of an interstate common carrier motor carrier service from Amarillo to the Texas-Oklahoma state line, via Panhandle, Shamrock, Mobeetie, Pampa and Borger, be and the same is hereby cancelled, effective as of this date."

After having written the letter, Reilly wired the Railroad Commission to disregard the request in said letter asking for the cancellation of certificate No. 2752, and to disregard request for transfer of amended portion of the same certificate. Thereafter, on November 29, 1933, the Railroad Commission rescinded its order of November 20, 1933, reinstating certificate No. 2752. Soon thereafter Reilly and the Transfer & Storage Company resumed operations, hauling freight under the certificate.

On April 24, 1934, Pete De Shong filed his first amended original petition, setting up in substance the foregoing facts, and alleging further that he entered into a contract with the Amarillo Transfer & Storage Company whereby said company bound and obligated itself to abandon the operation of its interstate motortruck line over highway 66 from Amarillo, Tex., to the Oklahoma-Texas state line in consideration of $500 cash paid to it on September 16, 1933, at the time of the execution of said contract. That for the same consideration, and as a part of said contract, the defendant Transfer & Storage Company agreed and obligated itself to procure a cancellation of its interstate certificate No. 2752, and further agreed in writing that it would not again operate as a common carrier over said highway 66 from Amarillo to the Oklahoma-Texas line, and would solicit all business theretofore handled by it from Oklahoma City to Amarillo in behalf of the plaintiff, and wrote a letter to the shippers of goods soliciting their business for plaintiff. That in consideration thereof De Shong paid $500 in cash, and the Transfer & Storage Company for a period of approximately 60 days ceased operations. That thereafter, in open violation of the written contract and agreement, it resumed its interstate motortruck operations over said highway, to plaintiff's damage in the sum of $1,000, and has ever since continued to carry on said business in utter disregard of its written contract. That it has retained the $500 cash paid to it and converted it to its own use and benefit, and has never at any time offered to rescind said contract, but has accepted the benefits thereunder. Plaintiff further makes the usual allegations that he will suffer irreparable injury, that the defendants are wholly insolvent, and that he has no adequate remedy at law; that the defendants by operating the truck line are causing him great damages in the loss of freight tonnage. In his prayer he refers to a temporary restraining order previously issued, and prays that upon final hearing the injunction be made permanent.

Reilly and the Transfer & Storage Company answered, alleging that the court had no jurisdiction to hear and determine the cause because (a) plaintiff's original petition shows that it is based upon a contract to cancel the common carrier's permit issued by the Railroad Commission under article 911b, which gives exclusive authority and jurisdiction to the commission to regulate, supervise, and control all motor carriers when in the state, and to issue, grant, or cancel permits or certificates for permission to operate motor freight lines; (b) that the Railroad Commission has the sole and exclusive power to cancel any permit issued by it, or to determine whether any one shall operate under a particular permit; (c) that said petition fails to show that the Railroad Commission has ever passed upon the cancellation of said permit No. 2752, and that the court has no jurisdiction to issue an injunction or to take cognizance of this suit until the plaintiff has followed the course of law and procedure provided by statute and filed his application for the cancellation of the permit before the State Railroad Commission; that under the law if he is dissatisfied with the ruling of the commission, he may then pursue his course through the court. There are several special exceptions, a general denial, and the defendants further allege that on the 16th day of September, 1933, plaintiff and defendants were competitors in the business of shipping freight by truck between Amarillo, Tex., and Oklahoma City, Okl. That the parties to this suit held the only permits issued by the Railroad Commission of Texas and the Corporation Commission of Oklahoma between said cities, and the competition between the parties was sharp. That the contract and agreement which plaintiff secured from the defendants was procured by false and fraudulent statements and representations in the following particulars: That at the time of the execution of said contract and agreement, one J. L. Pate was employed by defendants. That notwithstanding his employment, he entered into a conspiracy with plaintiff, De Shong, to defraud defendants and to secure from them the instrument in question. That as a part of said conspiracy it was agreed that Pate should make the false and fraudulent representations to C. A. Reilly that he, the said Pate, had been employed by R. W. Burnett, the general agent for the Southwestern Carloading Company of Oklahoma City, and that he was going to begin work immediately for said company, and was resigning his position with defendants. That he had been employed by Burnett to open a branch office at once for said company in Amarillo. That he was to receive a salary of $200 per month, with unlimited expense account. That he desired to lease from the defendants one floor of the warehouse then operated by

defendants for the purpose of opening such branch house and branch office. That on said date Reilly was the lessee of a four-story storage building at 601 Grant street in Amarillo. That the Universal Carloading & Distributing Company had already contracted for a branch office and branch house, and was going to secure storage space with the Armstrong Transfer & Storage Company of Amarillo. That Roy T. Weaver had stated to him, the said Pate, that said branch office and branch house of the Universal Carloading & Distributing Company, Inc., would be opened immediately.

Defendants further allege that prior thereto neither the Southwestern Carloading Company nor Universal Carloading & Distributing Company had any branch offices or houses in Amarillo, but did have branch offices in Oklahoma City, and were at that time the principal shippers using the defendants' truck lines, and were chief forwarders of freight through the defendants who did 75 per cent. of the hauling from Oklahoma City to Amarillo. That all of said representations made by Pate were false and fraudulent, and at that time he was in the employment of defendants. That they had confidence in him and believed the representations and relied thereon, and were induced thereby to enter into the contract and execute the writings above set out. That they would not have entered into said contract but for the false representations made by Pate who was, without their knowledge, acting as the agent, employee, and representative of plaintiff, De Shong. That at the time of making said representations, Pate had accepted employment from De Shong and had conspired with him to swindle and defraud the defendants. That because of the fraud and conspiracy the contract is without consideration and void. They further show that the Southwestern Carloading Company never at any time established a branch office at Amarillo, nor had it ever employed Pate to open any such branch office. That the Universal Carloading & Distributing Company had never told Pate that it had contracted for and was going to open a branch office in Amarillo.

The defendants further allege that immediately upon the execution of said contract they ceased operations, relying upon the false and fraudulent representations made by Pate. Thereafter, they learned that the statements and representations were false, and instructed the Railroad Commission to disregard their letter requesting cancellation of their permit No. 2752, and on the 27th day of November, 1933, resumed operations over highway 66, and have been carrying on business at all times since.

They especially alleged that the Amarillo Transfer & Storage Company, Inc., as well as C. A. Reilly individually, are in all things solvent, and have sufficient money, funds, and assets to pay any judgment which the plaintiff may secure against them for any alleged breach of any purported contract. That when the defendants ceased to operate on the 16th day of September, De Shong secured contracts with their former customers and shippers for hauling their goods, wares, and merchandise from Oklahoma City to Texas, for which reason defendants were not able to again secure the business of such shippers and forwarders until on or about the 27th day of November, 1933, and were forced to remain idle for a period of two and one-third months. That prior to said time they realized from their business great profits which they lost for a period of two and one-third months, to their damage in the sum of $1,400, for which amount they pray judgment against plaintiff in their cross-action.

Plaintiff replied by supplemental petition, denying the conspiracy or any agreement with Pate to defraud the defendants. He further denied that Pate was employed by him, and that in this connection Pate was acting in his own behalf or in behalf of defendants. He further alleged that defendants have failed and refused to return the $500 which he paid, and are therefore estopped to set up a violation of the contract, that it was procured by fraud, or that they have a right to do business under the certificate.

The case was submitted to a jury upon special issues, in response to which they found: (1) That before the contract was secured from the defendants and the consideration paid, De Shong and Pate knowingly entered into a conspiracy to the effect that Pate should make to C. A. Reilly the representations set out in defendants' pleadings, with the intent and purpose of inducing Reilly to enter into and consummate said contract and accept said consideration; (2) that Reilly believed the representations to be true; (3) that they were false; (4) that he was caused thereby to

execute the contract and receive the consideration of $500; (5) that the $500 was a fair and adequate consideration for said contract; (6) that the defendants were damaged by the consummation of the contract and the consequent cessation of business to the amount of $500; (7) that after Reilly learned of the conspiracy and representations he did not offer to rescind the contract or to repay the $500 to De Shong.

The judgment of the court is that the plaintiff, Pete De Shong, recover of and from the defendants, Reilly and the Amarillo Transfer & Storage Company, Inc., all court costs in this behalf expended, and that the defendants and each of them be perpetually enjoined from conducting any motor freight lines of any kind or character over United States highway 66 from Amarillo to the Texas-Oklahoma line, and that the defendants take nothing against plaintiff by reason of the matters set up in their answer and cross-action.

It appears that the findings of the jury were all in favor of the defendants, and yet the judgment of the court is contrary to all of the findings. R. S. art. 2209, is: "Where a special verdict is rendered * * * the court shall render judgment thereon unless set aside or a new trial is granted."

■ The general rule is that judgment cannot be rendered contrary to the findings of a jury on material issues in the case. Citizens' Nat. Bank v. E. H. Graham & Co. (Tex. Civ. App.) 25 S.W.(2d) 636.

Amended article 2211 (Vernon's Ann. Civ. St.) is: "The judgments of the Court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence," etc.

■ In the order of the court overruling a motion for new trial, there is a statement that the court finds that there is insufficient evidence adduced to establish the alleged conspiracy pleaded by said defendants and found by the jury in their verdict. We assume that the court acted upon that theory in rendering a judgment contrary to the verdict.

Article 2211 provides also that only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law. Moreover, the court cannot render judgment non obstante veredicto in the absence of a written motion requesting such rendition and reasonable notice to the opposite party. Parks v. Hines (Tex. Civ. App.) 68 S.W.(2d) 364. No such notice appears in the transcript. The court may also render a judgment non obstante veredicto if a directed verdict would have been proper, but in this case a peremptory instruction for either party would have constituted reversible error. Motion for judgment non obstante veredicto must apprise the court and opposing party of the grounds therefor, and must sufficiently disclose its nature. The rendition of a judgment non obstante veredicto is proper only when the pleadings and undisputed evidence clearly warrant it. Lee v. Lewis (Tex. Civ. App.) 287 S. W. 115, affirmed (Tex. Com. App.) 298 S. W. 408; North v. Atlas Brick Co. (Tex. Com. App.) 13 S. W.(2d) 59; Freeman v. Schwenker (Tex. Civ. App.) 73 S.W.(2d) 609; Bell v. Henson (Tex. Civ. App.) 74 S.W.(2d) 455. This will require a reversal of the judgment.

■ We overrule the appellant's contention that the court had no jurisdiction because this is a suit to cancel a permit issued by the Railroad Commission. By express provision of the statute (Vernon's Ann. Civ. St. art. 911b, § 20), a suit of that character must necessarily be filed in the district court of Travis county, and the Railroad Commission made a party. We do not understand the case to be one of that character. Plaintiff simply seeks to enjoin defendants from hauling freight in violation of a contract made with him not to do so for a consideration of $500 paid.

In view of another trial, it is not proper for us to discuss the evidence bearing upon the validity of the contract as being in restraint of trade, detrimental to the public service, tending to lessen competition between public service corporations, and the alleged fraud of De Shong and his right to come into equity with unclean hands.

■ Suffice it to say that under the facts alleged by defendants, if true, they would not be required to tender the $500 consideration which they received as a condition precedent to their right to recover damages from plaintiff for fraud. Should they establish fraud or conspiracy, and recover

**386**

damages on account thereof, it would be the duty of the court to take into consideration the $500 already paid, and enter judgment accordingly. If the amount of damages exceeds the $500, execution should be ordered only to the amount of such excess. If the damages awarded are less than $500, then plaintiff would be entitled to execution in his favor for such excess.

For the reasons stated, the judgment is reversed, and the cause remanded.